# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **SEAN KUBIC,** | Case No. |
| Plaintiff, | Judge |
| v. | |
| **AMERIGAS PROPANE INC., et al,** | |
| Defendants. | |

## NOTICE OF REMOVAL

NOW COME Defendants, AmeriGas Propane, Inc. ("AmeriGas") and Richard Hadsell ("Hadsell") (collectively AmeriGas and Hadsell shall be referred to herein as "Defendants"), by and through counsel, and file this Notice of Removal of Civil Action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to remove this matter from the Lorain County Court of Common Pleas of the State of Ohio to the United States District Court for the Northern District of Ohio. In support, Defendants state as follows:

1. On May 31, 2022, Plaintiff Sean Kubic ("Plaintiff") filed his Complaint in the Lorain County Court of Common Pleas of the State of Ohio, Case Number 22CV206087 ("State Court Action"). (*See* Exh. A – Declaration of James Smith, at Exh. 1 thereto.)

2. On or about June 3, 2022, Defendant AmeriGas was served with the Summons and Complaint by certified mail. (Exh. A – Declaration of James Smith, Exh. 1 thereto). On or about June 13, 2022 Defendant Hadsell was served with the Complaint. This removal is timely because the Notice of Removal was filed within 30 days of receipt of the Summons and Complaint by service or otherwise by AmeriGas and Hadsell.

3. AmeriGas is a Pennsylvania corporation, organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in King of Prussia, Pennsylvania. (*See* Complaint at ¶ 2.) Accordingly, AmeriGas is not a citizen of the State of Ohio.

4. Plaintiff is a citizen of the State of Ohio, upon information and belief, based on the address that Plaintiff provided in the caption of his Complaint.

5. Defendant Hadsell resides in and is a citizen of the State of Ohio. (*See* Complaint at ¶ 4.) Plaintiff purports to sue Hadsell in his individual capacity as an adverse decision maker who allegedly terminated Plaintiff's employment in violation of the public policy of the State of Ohio.

6. Plaintiff fraudulently joined Hadsell to defeat diversity jurisdiction. Fraudulent joinder occurs when a nondiverse party is added solely to deprive the federal courts of jurisdiction. 16 *Moore's Federal Practice*, § 107.14[2][c][iv][A]. A defendant has been fraudulently joined if there can be "no recovery under the law of the state on the cause alleged or on the facts in view of the law..." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994), quoting *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968). "Stated more succinctly, the question is whether a colorable cause of action exists against the non-diverse defendant." *Leiken Oldsmobile, Inc. v. Sentry Select Insurance*, 2008 U.S. Dist. LEXIS 84834 at *4 (N.D. Ohio Oct. 22, 2008.)

7. The only claims being asserted by Plaintiff against Hadsell are tort claims for wrongful discharge in violation of public policy. However, these claims are barred as a matter of law because Plaintiff was not employed on an at-will basis. Rather, Plaintiff was a member of union whose collective bargaining agreement with AmeriGas expressly provides that the Company

cannot discharge bargaining unit members without "just cause" and contains a grievance and arbitration procedure.

8. At the time of his discharge and at all relevant times hereto, Plaintiff was a member of Teamsters Local 637, and his employment with AmeriGas was governed by a collective bargaining agreement ("CBA") to which the union and AmeriGas are parties. (*See* Exh. B – Declaration of Robyn Koprowicz, at Exh. A thereto.). Article 7 of the CBA expressly provides that "[t]he Company shall not discipline, suspend or discharge an employee without just cause." Article 10 of the CBA contains a Grievance and Arbitration Procedure whereby all grievances (including those relating to the discharge of an employees are to be resolved).

9. In Paragraphs 21 and 22 of the Complaint, Plaintiff acknowledges, discreetly, that he was subject to a collective bargaining agreement by referencing the grievances that he filed during June 2021 regarding his claimed demotions.

10. Under Ohio law, a claim for wrongful termination in violation of public policy is only available to at-will employees. *See Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264 (6th Cir. 2007) (recognizing that under Ohio law an individual who is not an at-will employee cannot bring a claim for wrongful termination in violation of public policy); *see also Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 976 (N.D. Ohio 2010) (a *Greeley* claim is not available to an Ohio employee who is subject to a CBA); *Gilson v. Eliza Bryant Village,* 2013 U.S. Dist. LEXIS 157629 (N.D. Ohio Nov. 4, 2013) ("Because plaintiff was subject to the CBA, she is not at will. The CBA says [Defendant} has the right to discharge, suspend or otherwise discipline an employee for just cause. Because defendant may only terminate employees for cause, the employees are not employees at will. Therefore, plaintiff cannot bring a wrongful discharge claim in violation of public policy, a claim which is only available to employees at-will"); *Hanson v. Ohio Edison*, 1996

WL 11986 (9th Dist.1996) (where an employee is not at-will, that employee cannot maintain a *Greeley* claim under Ohio law). As the Ohio Supreme Court explained:

> *Greeley* provides an exception to the employment-at-will doctrine. Thus, as stated above, in order for an employee to bring a cause of action pursuant to *Greeley, supra*, that employee must have been an employee at will. The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. [Citations omitted]. [The plaintiff] clearly does not qualify as an employee at will. As a member of a union, the terms of her employment relationship were governed by a collective bargaining agreement. That agreement specifically limited the power [of the employer] to terminate [the plaintiff] and, as a result, took her outside the context of employment at will. Because she was not an employee at will, she is outside the class of employees for whom *Greeley* provides protection.

*Haynes v. Zoological Soc'y*, 73 Ohio St.3d 254, 258 (Ohio 1995).

11. Here, the Complaint is devoid of any allegation that Plaintiff was employed on an at-will basis - - a material element in a claim for wrongful discharge in violation of public policy.[1] And, in filing his Complaint, Plaintiff omits that he was a member of the Union. The Complaint also fails to mention that the CBA applicable to him expressly provides that he could only be discharged for "just cause." However, because Plaintiff was not employed on an at-will basis and, instead, per the terms of the CBA could only be discharged for cause, Plaintiff cannot, as a matter of law, maintain a wrongful termination in violation of public policy claim against Hadsell. *See Klepsky* 489 F.3d at 270; *see also Dobrski*, 698 F. Supp. 2d at 976; *see also Hanson* at *6; *see also Urban v. Osborn Mfg., Inc., et al.*, 8th Dist. Cuyahoga No. 86287, 2006-Ohio-1080, ¶¶ 9-18 (recognizing that an employee whose relationship with his employer is governed by a CBA cannot maintain a claim for wrongful discharge in violation of public policy because their employment rights are already subject to protections through their CBA).

---

[1]This pleading deficiency alone warrants dismissal of the entire Complaint.

12. Plaintiff's claims wrongful discharge in violation of public policy claims also fail against Hadsell because Plaintiff cannot demonstrate the "jeopardy" element necessary for a claim of wrongful discharge in violation of public policy.  Indeed, in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240 (Ohio 2002), the Ohio Supreme Court specifically ruled that there is no common law public policy cause of action "if there already exists a statutory remedy that adequately protects society's interest." *Wiles*, 96 Ohio St.3d at 244. *See also Hiller v. Aver Info., Inc.* 2021 U.S. Dist. LEXIS 158286 at *12 (N.D. Ohio Aug. 23, 2021) (the court may look to **any** relevant statute, and not just the statue pled by plaintiff, to determine whether or not there are statutory remedies available) (emphasis supplied); *DeMell v. Cleveland Clinic Foundation*, 2007 WL 1705084 at *5 (8th Dist. Ct. App. 2007) ("[T]he Wiles Court held that analysis of the jeopardy element involves inquiring into the existence of any alternative means of promoting the particular public policy. Moreover, the Court stated that "[s]imply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. **Thus, if any alternative means are available, the jeopardy element will not be satisfied**") (emphasis supplied); *Heck v. Wolff Bros*, 2017 U.S. Dist. LEXIS 201780 at *4 (N.D. Ohio Dec. 4, 2017).  Here, there exists statutory remedies that adequately protects society's interests - - Section 11(c) of the Occupational Safety and Health Act as well as the Ohio Whistleblowers Act (ORC Section 4113.52).  Section 11(c) of OSHA allows for reinstatement, backpay, compensatory and punitive damages.  Accordingly, Plaintiff cannot demonstrate the "jeopardy" element necessary to establish a claim for wrongful discharge in violation of public policy, thereby providing this Court with controlling grounds to ignore Hadsell's residence for purposes of determining diversity.

13. Thus, as a matter of law, none of the claims asserted by Plaintiff against Hadsell in the Complaint can result in recovery based on the facts and claims alleged in the Complaint. Hadsell was fraudulently joined and his status as an Ohio resident cannot thwart removal based on complete diversity.

14. Defendant AmeriGas consents to the removal of this case to Federal Court. Defendant Hadsell likewise consents to the removal of this case.

15. There have been no pleadings filed by any of the Defendants in the State Court Action. (Exh. A – Declaration of James Smith at ¶ 3. Accordingly, by attaching the Complaint to the Notice of Removal, the requirements of 28 U.S.C. § 1446(a) have been met.

16. Defendants have a good faith basis to believe that the amount in controversy in this case exceeds $75,000, exclusive of interests and costs. In the prayer for relief included in Plaintiff's Complaint, Plaintiff seeks in excess of $25,000 and prays that the Court award him economic and non-economic compensatory damages, back wages, interest, fringe benefits, witness fees and fees for experts, consequential damages, incidental damages, punitive damages, and reasonable attorneys' fees, in addition to all other equitable relief the Court may deem appropriate. (Complaint at 7).

17. Alone, Plaintiff's prayer for relief confirms Defendants' good faith belief that the amount in controversy exceeds $75,000.00. *See Varny v. Infocision, Inc.*, 2013 U.S. Dist. LEXIS 88971 * 6-7 (S.D. Ohio June. 25, 2013) (complaint alleging a claim of wrongful discharge in violation of public and requesting unspecified damages in excess of $25,000, inclusive of lost wages and benefits, punitive damages, emotional distress and loss of reputation (i.e. non-economic compensatory damages) demonstrated that the amount in controversy requirement for removal was met).

18. There is more. Plaintiff is requesting an award of backpay. At the time of his discharge, Plaintiff was paid a rate of $20.30 per hour. (*See* Exh. B – Declaration of Robyn Koprowicz, at ¶ 3). Excluding overtime (and assuming no wage increases and assuming that he works only 40 hours a week), Plaintiff's annual compensation on a straight time basis, alone, would be approximately $42,224.00. Per the Complaint, Plaintiff was discharged on June 22, 2021. That being the case his straight time backpay total is currently approximately $42,224.00.[2] Assuming trial is held one year from the date Plaintiff filed his Complaint, Plaintiff's potential straight time backpay award, alone, will be approximately $84,448.00 - - well in excess of the $75,000 amount in controversy threshold required for diversity jurisdiction.[3]

19. Plaintiff is also seeking non-economic compensatory damages (i.e. damages for emotional distress) stemming from his alleged wrongful discharge. Such damages, in addition to Plaintiff's current backpay amount (as well as the other relief requested in the Complaint) would further exceed the $75,000.00 threshold. *See Pakledinaz v. Consolidated Rail Corp.*, 737 F. Supp. 47, 48 (E.D. Mich. 1990) (claims for damages for emotional distress injuries could easily exceed $50,000).

20. Plaintiff additionally seeks to recover punitive damages. If Plaintiff is able to establish that he is entitled to punitive damages (and Defendants deny all liability and deny that Plaintiff is entitled to any damages, punitive or otherwise), the award of punitive damages by itself could exceed the jurisdictional minimum. To that end, courts have recognized that a Plaintiff's

---

[2] In providing this amount in controversy analysis, Defendants are in no way conceding or admitting that Plaintiff is entitled to any damages or other relief sought in his Complaint.
[3] Plaintiff also earned approximately $9,000 in overtime compensation during the first 6 months of 2021. This would project out to about an a total of $18,000 in OT per year - - further adding to the potential economic damages and pushing the amount in controversy beyond the $75,000 threshold.

claim for punitive damages might alone exceed the jurisdictional minimum. *See Conrad v. McDonald's Corp.,* 2016 U.S. Dist. LEXIS 55429 (S.D. Ohio April 26, 2016) ("It is not uncommon for punitive damages to greatly exceed compensatory damages"); *Aucina v. Amoco Oil, Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (denying a motion to remand where the plaintiff sought "punitive damages" against a company and the court noted that "the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct"). In sum, if successful, Plaintiff's claim for punitive damages would push the amount in controversy even further over the jurisdictional minimum.

21. Finally, in addition to other unspecified damages, Plaintiff requests attorneys' fees, expenses, and costs. Although Defendant denies that Plaintiff is entitled to attorneys' fees (or any other damages or relief), if successful, Plaintiff's request for attorneys' fees could push the amount in controversy even further over the jurisdictional minimum. To illustrate, in *Davis v. Kindred Nursing Ctrs. E., L.L.C.*, Case No. 2:05-CV-1128, 2006 U.S. Dist. LEXIS 11425 (S.D. Ohio 2006), the court found that the inclusion of potential attorneys' fees (along with potential punitive damages) established that the amount in controversy exceeded $75,000 where the plaintiff's annual compensation was between $10,000 and $15,000). *See also Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (holding that "the request for attorneys' fees properly placed this case within the purview of federal jurisdiction"). Moreover, as with punitive damages, attorneys' fees alone could meet the jurisdictional amount in controversy if this case proceeds through trial. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (noting that attorneys' fees in individual plaintiff employment cases often exceed the award of damages).

22. Taking Plaintiff's economic and non-economic compensatory damages claims together with his request for punitive damages and attorneys' fees, this is the type of case wherein

the damages sought routinely exceed $75,000.00 and may be removed notwithstanding Plaintiff's failure to precisely state an amount of damages exceeding the requisite amount in controversy. *Kennard v. Harris Corp.*, 728 F. Supp. 453, 454 (E.D. Mich. 1989); *Pakledinaz*, 737 F. Supp. at 48.

23. Therefore, the requirements of 28 U.S.C. §1332(a) have been met in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because this action is a civil action between citizens of different states.

24. Since the parties in this case are diverse and Hadsell has been fraudulently joined, the parties to this action are completely diverse and this action and is subject to removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Accordingly, the United States District Court for the Northern District of Ohio has original jurisdiction over this matter, and this is a civil action.

25. As required by 28 U.S.C. §1446(d), AmeriGas has provided written notice of the filing of this Notice of Removal of Civil Action to counsel of record for Plaintiff and will promptly file a copy of this Notice of Removal of Civil Action with the Clerk of Courts for the Lorain County Court of Common Pleas. The Notice of Filing of Notice of Removal is attached to the Declaration of James Smith as Exhibit 3.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants remove this above-captioned case from the Lorain County Court of Common Pleas of the State of Ohio to the United States District Court for the Northern District of Ohio, Eastern Division.

Respectfully submitted,

/s/ *James P. Smith*
James P. Smith (0073945)
Trevor Hardy (0091065)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114-9612
Telephone: 216.696.7600
Facsimile: 216.696.2038
jpsmith@littler.com
thardy@littler.com

Attorneys for Defendants
AmeriGas Propane Inc. and Richard Hadsell

## **CERTIFICATE OF SERVICE**

A copy of the foregoing *Notice of Removal* was filed electronically this 29th day of June, 2022.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

4870-6429-4694.1 / 096970-1046